UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 23-296 (PJS/LIB)

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | **GOVERNMENT'S TRIAL BRIEF** |
| v. | |
| JERALD ROBERT COBENAIS, | |
| Defendant. | |

The United States of America, by and through its attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota, and Rachel L. Kraker and Hillary A. Taylor, Assistant United States Attorneys, hereby respectfully submits this trial brief outlining the evidence the Government intends to produce at trial. The Government respectfully requests the opportunity to supplement this brief and other trial documents as necessary to respond to defense arguments and other developments prior to trial.

## BACKGROUND

### I. THE CHARGES AGAINST THE DEFENDANT

In the early morning hours of June 18, 2023, 28-year-old Jerald Cobenais raped 18-year-old K.S. at a high school graduation party on the Red Lake Indian Reservation. Defendant Jerald Robert Cobenais is charged by Indictment with one count of Aggravated Sexual Abuse, in violation of 18 U.S.C. §§ 2241(a), 1151, and 1153(a), and one count of Sexual Abuse, in violation of 18 U.S.C. §§ 2242(1), 1151, and 1153(a).

## II. ELEMENTS OF THE CHARGED OFFENSES

The crime of Aggravated Sexual Abuse, as charged in Count 1 of the indictment, has four elements:[1]

*One*, on or about June 18, 2023, the defendant knowingly caused or attempted to cause another to engage in a sexual act;

*Two*, the defendant did so by the use of force against that person;

*Three*, the defendant is an Indian person as defined by federal law; and

*Four*, the sexual act occurred within the exterior boundaries of the Red Lake Indian Reservation.

The crime of Sexual Abuse, as charged in Count 2 of the Indictment, has four elements:[2]

*One*, on or about June 18, 2023, the defendant, Jerald Robert Cobenais, knowingly caused or attempted to cause another to engage in a sexual act;

*Two*, the defendant knowingly caused or attempted to cause another to engage in a sexual act by placing that person in fear;

*Three*, the defendant is an Indian person as defined by federal law; and

*Four*, the sexual act occurred within the exterior boundaries of the Red Lake Indian Reservation.

Under 18 U.S.C. § 2246(2), the term "sexual act" means: (A) contact between the penis and the vulva or the penis and the anus, and contact involving the penis occurs upon

---

[1] 18 U.S.C. § 2241(a)(1); Manual of Model Criminal Jury Instructions for the Eighth Circuit §§ 3.09, 6.18.113(1)-(2) (2023) (modified); *United States v. Cobenais*, 868 F.3d 731, 739 (8th Cir. 2017) (aggravated sexual abuse elements).

[2] 18 U.S.C. § 2242(1); Manual of Model Criminal Jury Instructions for the Eighth Circuit §§ 3.09, 6.18.113(1)-(2) (2023) (modified); *United States v. Bagola*, 796 F.3d 903, 907 (8th Cir. 2015) (sexual abuse elements).

2

penetration, however slight; (B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus; or (C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.

### III. ANTICIPATED FACTS AT TRIAL[3]

#### A. June 18, 2023—the Sexual Assault

In the late to early hours of June 17-18, 2023, 18-year-old K.S. and her friends attended a high school graduation party at the Donnell residence on the Red Lake Indian Reservation near Little Rock, Minnesota. K.S. was a high school student, and she and her four female friends were teenagers—D'Shaye Bailey, Kyleigh Thunder, Mariah Graves, and K.N.[4] K.S. was also dating K.N., who she had met in high school. Around or after midnight, their group was dropped off at the party by K.S.'s uncle, Jerrik DeMarrias. The girls walked down a long, dark driveway to a party being held in and around a tent outside. People were drinking alcohol. There was loud music. And there were a large number of attendees, many of whom K.S. did not know.

---

[3] The factual summary provided, given upon information and belief, is not intended to be a full description of the Government's evidence in this case. It is provided in order to inform the Court as to the factual allegations against the Defendant, give the Court sufficient information to consider the Government's motions in limine, and advise the Court as to potential legal and factual issues during trial. The Government respectfully reserves the right to supplement its trial brief or its motions in limine in advance of trial in light of upcoming meetings with witnesses and in response to the defendant's filings.

[4] The Government uses initials for K.N. because she is still a minor.

28-year-old Jerald Cobenais was one of those attendees K.S. did not know.[5] Cobenais arrived at the graduation party earlier than K.S. and her friends. After K.S. arrived, Cobenais approached the girls, and K.S. was talked into taking part in a "shot for shot" drinking game with Cobenais. During the game, K.S. took about three shots of a liquor called Pink Whitney. After this, Cobenais told K.S. that he had another bottle of alcohol in his truck and wanted K.S. to go with him to get it. Cobenais led K.S. away from the party tent, away from others, and to the dark area where he parked his truck. K.S. was "buzzed" from consuming alcohol but was not impaired.

While they were walking to his truck, Cobenais asked K.S. if she was over the age of 18. Cobenais tried to kiss K.S., which she did not want to do and rejected Cobenais's advances. Cobenais then took K.S. to the far side of his truck under the guise of getting his bottle of alcohol, where he tried to kiss her again and she rebuffed. K.S.'s rejection made Cobenais upset. From there, things escalated quickly.

Around 2:30 a.m. on June 18, 2023, Cobenais raped 18-year-old K.S. outdoors under the cover of darkness and the loud music of the nearby party. Cobenais forced K.S. to her knees, and took his erect penis out of his pants. Cobenais forced his penis into K.S.'s mouth and began thrusting as he held K.S.'s head with his hands. She tried to push Cobenais off during the assault, but he would not let her go. K.S. vomited because of this assault.

---

[5] K.S. knew of Cobenais from being around the reservation and social media but did not know him personally.

Undeterred by this reaction, Cobenais pushed K.S. to the ground. Cobenais then took down his and K.S.'s pants. She was on her back, and he was on top of her. Cobenais raped K.S. by inserting his fingers and then his penis inside K.S.'s vagina. K.S. felt intense physical pain from these horrific acts. K.S. tried to cry for help, but Cobenais covered her mouth. K.S. recalled that the incident stopped only when Cobenais was "done," which she believes was when he ejaculated. She was unsure whether he used a condom during the assault. Cobenais told K.S. that he had a vasectomy and did not want any kids. When Cobenais got off of K.S., she was able to get away. K.S. is not sure how long the assault occurred, but believes she had been away from her friends approximately 20 minutes.

After this assault, K.S. fled back to the party tent area, messaged her friends in a group chat that Cobenais had raped her, and asked to leave the party. When K.S. reunited with her friends, she was crying. K.S., through tears, told K.N., Bailey, Graves, and Thunder that Cobenais had sexually assaulted her. At first, Bailey could not hear her over the music. So K.S. told her to look at her messages, where Bailey saw the message that Cobenais had forced himself on K.S. K.S. later "unsent" the message stating that Cobenais had raped her after a few of her friends saw it. K.S.'s friends noticed that while she was crying and flushed, it also appeared that K.S. was in physical pain. K.S. was having difficulty moving around and frequently stopped, bending over and holding her lower body area. Bailey and K.N. consoled K.S., while Thunder and Graves left to confront Cobenais at the party.

K.S. asked to leave the graduation party immediately. DeMarrias received a call from K.S. around this time to pick her up from the party. DeMarrias recalled that K.S. was

5

crying on the phone. When DeMarrias picked her up, K.S. was still crying and disclosed that Cobenais had forced himself on her. DeMarrias noticed that K.S. was moving like she was sore, and when she sat down in his vehicle, K.S. said it hurt. DeMarrias brought K.S. home. While at home the morning of June 18, K.S. told her mother Khrisha Stately about the assault by Cobenais. K.S. was still in an emotional state at the time. In response to K.S.'s report, Stately offered to take K.S. to the emergency room at Red Lake Indian Health Services (IHS) hospital for treatment and to report what occurred.

The same day, June 18, Stately took K.S. to the IHS emergency room. After 1:00 p.m., K.S. was examined in the E.R., during which she disclosed that she had been sexually assaulted. Upon being informed that she could report this incident to police, K.S. agreed to do so. At the E.R., K.S. initially spoke with Red Lake Police Department ("RLPD") Officer Chandler Ross in a trauma room. K.S. gave a brief disclosure of what occurred at the graduation party and how Cobenais raped her. K.S. also noted she was still in the same clothes and had not showered yet. During this time, FBI Special Agent Paul Voss and RLPD Criminal Investigators Geoff Pierre and Daniel Lasley were onsite for a separate matter. They received notice of K.S.'s sexual assault report and responded to K.S.'s room. SA Voss recorded an interview with K.S. in which she disclosed a more detailed, consistent report that she had been raped by Cobenais earlier that morning at a graduation party, as detailed above. K.S. told law enforcement that she had never spoken to Cobenais before this assault. Regarding her drinking, K.S. said she was "buzzed" but was aware of her surroundings and not drunk. Additionally, K.S. disclosed that she had never had penile/vaginal penetration before this incident.

During her interview, K.S. showed law enforcement where the rape occurred on Google Maps. The location is within the jurisdictional boundaries of the Red Lake Indian Reservation. She was also able to describe Cobenais's truck and clothing. K.S. then consented to undergo a sexual assault nurse examination ("SANE") and was discharged from IHS to go to the Sanford Medical Center in Bemidji to have that examination.

B.     **The SANE Examination and DNA Results**

K.S.'s sexual assault examination began at approximately 6:00 p.m. that same day and lasted almost two hours. Registered Nurse Sarah Smidt, a fact and expert witness in this case, performed the examination. Smidt will testify that the exam was conducted pursuant to a consistent practice of evaluating patients who report sexual assault. K.S. was given a complete head-to-toe examination and provided the opportunity to give a narrative account of the assault. This narrative account helped direct the sexual assault-specific examination. K.S. reported multiple forms of penetration by Cobenais to Smidt and provided a description of the physical pain she was feeling as a result of the assault. During the examination, Smidt observed and photographed K.S.'s body consistent with the protocol developed by her medical practice. Smidt also obtained swabs from multiple areas on K.S.'s body where Cobenais had touched or sexually assaulted her. Those swabs were subsequently tested by the FBI.

On July 7, 2023, SA Voss executed a search warrant to take a buccal swab from Cobenais for DNA testing. On March 22, 2024, the FBI DNA Laboratory provided the U.S. Attorney's Office with its final laboratory results regarding the comparative testing of the defendant's known DNA profile against DNA collected during K.S.'s forensic

examination on June 18, 2023. The results were disclosed by the Government to defense the same day. These results stated Cobenais's DNA profile was present to a very strong likelihood degree on K.S.'s perineal swab. *See* DNA Lab Report at 2 ("The DNA results from item 3 are 700 million times more likely if [K.S.] and COBENAIS are contributors than if [K.S.] and an unknown, unrelated person are contributors.").

  C. **The Defendant's July 7, 2023 Statement**

On July 7, 2023, SA Voss interviewed Cobenais at his workplace, the Red Lake Transfer Station. The interview was recorded. During the interview, Cobenais made gradual admissions and minimized his conduct. He started by claiming he did not really interact with K.S. at the graduation party and did not remember anything happening between him and K.S. Then Cobenais disclosed he kind of knew who K.S. was and that they drank together. Cobenais stated that K.S. followed him to his truck when he went to get more drinks, but nothing happened there. After being challenged about that statement, Cobenais stated he may have gotten a kiss from K.S. but that was it. Then he stated that he may have asked K.S. if she wanted to have a "quickie."

Eventually, within his shifting story, Cobenais claimed that he and K.S. had consensual oral and penetrative sex. Cobenais said K.S. helped "put it in" and told him the sex was "wonderful." Cobenais also showed SA Voss a screenshot of a Snapchat photo depicting him and K.S. allegedly taken after the incident at 3:08 a.m. Cobenais portrayed this as evidence that he and K.S. were on good terms after the sexual encounter that he described as consensual. While Cobenais told SA Voss he took the picture, records show that K.S. was the one who took the picture on Snapchat approximately 40 minutes before

8

3:08 a.m. K.S. told law enforcement the picture was taken before the assault, and the metadata from the photo along with witness accounts corroborate K.S.'s statement and contradict the assertions made by Cobenais.

## IV. TRIAL COUNSEL

The United States will be represented at trial by the following Assistant United States Attorneys:

| | |
|---|---|
| Rachel L. Kraker | Hillary A. Taylor |
| 300 S. 4th St., Suite 600 | 300 S. 4th St., Suite 600 |
| Minneapolis, MN 55415 | Minneapolis, MN 55415 |
| Tel: 612-664-5600 | Tel: 612-664-5600 |
| rachel.kraker@usdoj.gov | hillary.taylor@usdoj.gov |

## V. LENGTH OF TRIAL

The Government anticipates that its case-in-chief can be presented in two and a half to three days, depending on whether there will be factual stipulations by the parties, further described below. Allowing for jury selection, jury charge, and a possible defense case, the Government believes that four days should be sufficient time to complete the trial.

## VI. WITNESSES

The Government anticipates calling between seven to 12 witnesses, who can generally be divided into three witness categories: (1) law enforcement, (2) civilian, and (3) expert. The Government provided the defense with its expert notice and disclosures pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G) on April 5, 2024. The Government has not received notice of any defense experts.

## VII. ANTICIPATED DEFENSES

The Government anticipates Cobenais will assert a consent defense. (*See* ECF No. 59 (defendant's Rule 412 motion describing his potential defense).) However, depending on the May 6, 2024 exhibit and witness list exchanges, such a defense may change.

## VIII. ANTICIPATED EVIDENTIARY AND PROCEDURAL ISSUES

### A. Motions in Limine

Concurrent with the submission of this trial brief, the Government is filing the following motions in limine:

1. Motion to Preclude Reference to Possible Punishment.

2. Motion to Preclude the Defendant From Referencing Jury Nullification or Raising Non-Pertinent Aspects of the Defendant's Personal Background.

3. Motion to Preclude the Defense from Offering or Referring to the Defendant's Self-Serving Hearsay Statements.

4. Motion to Preclude the Defendant From Offering Improper Character Evidence of Any Witness.

5. Motion to Preclude Defense Expert Testimony and Unnoticed Defenses.

6. Motion to Exclude Victim Sexual History under Rule 412.

7. Motion to Allow Evidence of Statement Made by Victim for Medical Treatment under Rule 803(4).

8. Motion Seeking to Admit the Victim's Outcry Reports as Excited Utterances under Rule 803(2).

Pursuant to the Court's March 28, 2024 Order (ECF No. 55), the parties do not anticipate exchanging witness or exhibit lists until May 6, 2024. The Government reserves the right to bring additional motions as appropriate depending on defense witnesses or exhibits.

B.  **Request to Sequester Witnesses**

The United States respectfully moves to sequester potential witnesses, except for the Government's case agent and a defense investigator, pursuant to Federal Rule of Evidence 615. Under Federal Rule of Evidence 615, sequestration of most witnesses is mandatory when requested, but the district court is granted wide latitude in implementing sequestration orders, and the standard of review is abuse of discretion. *United States v. Collins*, 340 F.3d 672, 680 (8th Cir. 2003). Rule 615 provides, in relevant part, that "[a]t a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony." However, Rule 615 does not authorize exclusion of (1) a party who is a natural person, (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, (3) a person whose presence is shown by a party to be essential to the presentation of the party's cause, or (4) a person authorized by statute to be present. Fed. R. Evid. 615(a)-(d). Government case agents fall within these exceptions to this rule. *See United States v. Engelmann*, 701 F.3d 874, 877 (8th Cir. 2012); *United States v. Sykes*, 977 F.2d 1242, 1245 (8th Cir. 1992).

Accordingly, the United States requests that the Court issue an order sequestering all witnesses during trial, but that the Government's case agent, FBI Special Agent Paul Voss, and one defense investigator be exempted from sequestration.

C.  **Excited Utterances Under Fed. R. Evid. 803(2)**

The Government has moved for the admission of excited utterances made by K.S. as an outcry to friends and her uncle after the sexual assault by Cobenais. Under Rule 803(2) of the Federal Rules of Evidence, statements "relating to a startling event or

11

condition, made while the declarant was under the stress of excitement that it caused" are excepted from the hearsay rule. Fed. R. Evid. 803(2). The detailed legal basis for admission of these statements is fully described in the Government's consolidated motions in limine. The statements K.S. made to her friends D'Shaye Bailey, Kyleigh Thunder, Mariah Graves, and K.N., as well as to her uncle Jerrik DeMarrias are summarized above. (*See supra* Section III.A., pp. 5-6.)

This outcry occurred at the earliest opportunity for K.S. to disclose to her friends after the sexual assault occurred. The only time passage between the assault and K.S.'s disclosure to her friends was the amount of time it took for her to leave from the area of the truck to the tent where her friends were located. During this time, K.S. also called DeMarrias to pick her up and take her home. DeMarrias recalled that K.S. was crying on the phone. When DeMarrias picked her up, K.S. was still distraught and disclosed that Cobenais had forced himself on her. DeMarrias noticed that K.S. was moving like she was in pain.

K.S.'s statements to friends and family during the short period of time she was still experiencing the stress and physical pain associated with the sexual assault constitute admissible substantive evidence that the jury should be permitted to hear in order to fully understand the events that occurred that evening, to evaluate the actions taken by K.S. and

all involved, and to consider when evaluating K.S.'s credibility as a witness on the stand.[6]

### D. Stipulations

To streamline the trial, on April 5, 2024, the Government offered to stipulate regarding (1) the defendant's Indian status; (2) the victim's Indian status; and (3) the Indian Country jurisdiction. The Government followed up with defense regarding this offer on April 15, 2024. These issues do not appear to be in dispute. The Government is awaiting a response from defense counsel as to whether the defendant will stipulate. If agreed upon, the Government will submit as an exhibit the signed factual stipulations at trial.

### E. Admissibility of Clips from the Defendant's Statement

The defendant was interviewed by the FBI in a recorded interview on July 7, 2023. The interview includes a number of relevant, stand-alone statements by Cobenais that are admissible statements of a party opponent pursuant to Fed. R. Evid. 801. However, the statement also includes excisable statements regarding irrelevant and inadmissible subject matter and other stand-alone statements constituting inadmissible self-serving hearsay. The Government is in the process of identifying the clips of the defendant's statement that it intends to introduce at trial in order to provide counsel with the opportunity to make challenges or request rule of completeness additions to the clips. The defense submitted a transcript of the defendant's statement to law enforcement as an exhibit at the defendant's

---

[6] The Government is confident that the appropriate foundation will be laid for witness testimony to establish the admissibility of the excited utterances K.S. made to her friends and uncle shortly after the sexual assault. However, the Government recognizes that the Court may wish to hear from a witness or witnesses to determine the statements' admissibility. Accordingly, the Government has no objection to a deferred ruling at the time such evidence is presented at trial, or out of the presence of a jury.

suppression hearing on November 30, 2023. The Government is currently utilizing this previously agreed-upon transcript for the purposes of syncing with the audio clips that will be ultimately presented to the jury and for use as an aid in the event it is necessary to refresh the recollection of either the law enforcement officers who interviewed Cobenais or Cobenais himself, should he elect to testify.

F.     **Admissibility of Evidence Pursuant to Fed. R. Evid. 412**

The Government plans to elicit testimony at trial from K.S. that she had never engaged in penile/vaginal penetration prior to the date the of sexual assault. This evidence is highly relevant to the jury's consideration of K.S.'s credibility when evaluating her testimony regarding the assault. This evidence is also probative and relevant to K.S.'s report of physical pain experienced as a result of the assault and the statements of her friends, family, and SANE nurse who also noted K.S.'s description of pain. Such evidence does not implicate Rule 412, but the rule *is* implicated if the defense seeks to introduce specific instances of sexual conduct, history, or predisposition to rebut or refute the victim's claimed inexperience.

The defendant has filed a motion under Rule 412 to "introduce the alleged victim's relationship with K.N." (ECF No. 59 at 3.) While the fact that the victim is dating K.N. is not implicated by Rule 412, the Government argues in its accompanying motion in limine that any inquiry about their sexual history is and should be excluded under Rule 412. The Government operates under the assumption that defense will abide by the prohibitions set forth in Rule 412. To the extent defense seeks to argue that admissibility of the victim's sexual history and sexual partners is required to ensure Cobenais's constitutional right to a

14

complete defense, the Government reserves its right to further respond. Additionally, and to avoid potential highly inflammatory evidence, the Government requests an opportunity to be heard prior to such evidence being offered in front of the jury.

### G. Use of Exhibits in Government's Opening Statement

The Government anticipates potentially using a small selection of photographs and a map from its exhibits as a part of its opening statement. The Government will confer with defense counsel as to whether the parties can stipulate to the use of these exhibits prior to trial. If no such agreement is reached, the Government may request that the Court rule on the admissibility of these exhibits during the parties' pretrial conference to permit the Government to use these exhibits in opening statement.

Dated:  April 24, 2024                                   Respectfully submitted,

                                                      ANDREW M. LUGER
                                                      United States Attorney

                                                      *s/ Hillary A. Taylor*
                                  BY:   RACHEL L. KRAKER (#0389380)
                                        HILLARY A. TAYLOR (#0398557)
                                        Assistant United States Attorneys